**EXHIBIT E**

Complaint dated October 28, 2024

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF CHEBOYGAN

THOMAS MORAN, an individual, and
MORAN IRON WORKS, INC., a Michigan
corporation,

        Plaintiffs,

v

RANDY BISHOP, an individual, and
MICHIGAN BROADCASTERS, LLC, a
Michigan limited liability company

        Defendants.

Case No. 24- *9092* NZ

Hon. Aaron J. Gauthier

### COMPLAINT

BODMAN PLC
By: Sandra L. Jasinski (P37430)
    Spencer M. Darling (P87321)
201 South Division Street – Suite 400
Ann Arbor, Michigan 48104
(231) 627-8012
sjasinski@bodmanlaw.com
sdarling@bodmanlaw.com
Attorneys for Plaintiffs

**A TRUE COPY**

OCT 2 8 2024

*Karen L. Brewster*
CLERK REGISTER CHEBOYGAN CO.

*There is no other civil action between these parties arising out of the same transactions as
alleged in this complaint pending in this Court, nor has any such action been previously filed
and dismissed or transferred after having been assigned to a judge.*

## INTRODUCTION

Defendant Randy Bishop (a/k/a "Trucker Randy") hosts a program on radio station 97.7 WCHY owned by Defendant Michigan Broadcasters, LLC ("Michigan Broadcasters" or "WCHY").   Mr. Bishop is a self-styled "patriot" who mistakenly believes that the First Amendment to the United States Constitution provides him with the right to lie with impunity about local residents and their businesses by accusing them of committing crimes.  In this case, using the bully pulpit provided by Defendant's broadcast license for WCHY, Defendant Bishop repeatedly and falsely accused Plaintiff Tom Moran, the founder and president of Plaintiff Moran Iron Works ("MIW"), of "shipping in illegal" immigrants to work at the successful Onaway business he started over 40 years ago.  Defendant Bishop's lies that were broadcast over WCHY are not only a textbook example of defamation *per se,* but the fallout from those lies is, sadly, the same as recently seen in Springfield, Ohio—the harassment and intimidation of certain members of MIW's workforce and their school-aged children.  Plaintiffs submit that free speech does not equal freedom from the consequences of defamation.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Thomas Moran is a Michigan resident who resides in Cheboygan County, Michigan.

2.     Plaintiff Moran Iron Works ("MIW")  is a Michigan corporation with its principal place of business located in Cheboygan County Michigan.

3.     Plaintiff. Moran is the founder, majority shareholder, and long-time president of MIW.

4.     Defendant Randy Bishop is a Michigan resident who, upon information and belief, resides in in Antrim County, Michigan.

1

5.     Prior to beginning his radio broadcasting career, upon information and belief, Defendant Bishop was a contractor who was convicted on two felony fraud counts in connection with taking $50,000 from a Macomb County couple for a building project. *See* Composite Exhibit 1.

6.     Defendant Michigan Broadcasters, LLC is a Michigan limited liability company with its registered offices located at 11089 Wood Special Dr., Kewadin, Michigan 49648 which holds the FCC broadcast license for WCHY. *See* Exhibit 2.

7.     Jurisdiction is proper in this Court because the amount in controversy exceeds $25,000.00, exclusive of interest and costs.

8.     Venue is proper in this Court pursuant to MCL 600.1629.

## GENERAL ALLEGATIONS

9.     In 1978, Tom Moran established MIW and has been its president and majority shareholder since then

10.    Over the last 40 years, MIW has developed a national reputation as a custom fabricator specializing in turnkey metal solutions for power, marine, industrial, and hydro markets. MIW takes projects from the design stage to finished product.

11.    Increasingly over the past several years, MIW has faced the challenge of finding qualified workers in the local community to fulfill its contracts and projects.

12.    As a result of the challenges/difficulties of finding local residents to fulfill its workforce needs, MIW has recruited additional workforce from outside of the United States.

13.    When recruiting workers from outside of the United States, MIW fully complies with all applicable laws, regulations and rules (both state and federal) regarding the hiring of non-United States nationals.

2

14.     According to the State of Michigan's Department of Licensing and Regulatory Affairs, "Victoria Bishop" is a member and the resident agent of Defendant Michigan Broadcasters.

15.     Upon information and belief, Victoria Bishop is the wife of Defendant Randy Bishop.

16.     Since 2011, Defendant Michigan Broadcasters has conducted business under the assumed names of "Patriot Radio", "Patriot TV", and "Patriot Voice."

17.     Defendant Bishop hosts a call-in program on WCHY entitled "Your Defending Fathers."

18.     "Your Defending Fathers" is broadcast on WCHY on Monday through Friday between the hours of 9:00 am and noon.

19.     Defendant Bishop has also established a number of websites to espouse his views, including one with the domain name, "yourdefendingfathers.com."

20.     Defendant Bishop brands the "Your Defending Fathers" program as being distributed or otherwise affiliated with "Patriot Voice" and "Patriot Radio.

21.     The "contact information" on the "yourdefendingfathers.com" website identifies an email of patriotvoice2021@gmail.com.

22.     The "advertiser" page of the website for yourdefendingfathers.com invites would-be advertisers to advertise with "Patriot Voice Radio," *i.e.,* Defendant WCHY.

23.     The WCHY website (wchy.us), displays Defendant Bishop's personal "X" (f/k/a Twitter) feed on its homepage.

3

24. During the September 12, 2024 broadcast of Defendant Bishop's show on WCHY, Defendant Bishop accused Plaintiffs of "shipping in illegal immigrants" to work at MIW and made the following statements regarding Plaintiffs:

(a) "[They] don't want to talk about these one in six women getting raped, most likely going to get raped by an illegal immigrant, not a law-abiding citizen, not somebody in your community, somebody in your county. Well, this goes even closer to home, illegal immigrants being flown into Alpena County Airport. I got two other people texting me that that actually occurred. Greg brought it up first. There is a businessman who is running to be on the Onaway School Board, Tom Moran of Moran Iron Works."

(b) "[During the 2023 Reagan Day Dinner] Tom Moran spoke about building housing and shipping in, bringing in, illegal migrants to work in his Moran Iron Works. Because he can't find Americans to do the work."

(c) "Now that the guy's on the ballot to be a school board member, I can speak the truth about him and his agenda. People of Onaway, do you really want a person who is openly violating and breaking our immigration laws to benefit his company, and then turn around and ask you to vote for him, to be on the Onaway School Board?"

(d) Defendant Bishop speculated that Plaintiff Moran's decision to seek election to the Onaway School Board was "perhaps" because the school did not teach Spanish and "]Moran] wants those illegals' children to be able to attend the Onaway public school and to be taught English because they only speak Spanish right now."

4

(e)     "And this agenda is being driven by one of the wealthiest, if not the wealthiest, business owner in Onaway, Moran Iron Works . . . . Can't find the workers, so he's going to bring illegals into Presque Isle County. I got a very simple question for the county sheriff Joe Brubaker, who's a personal friend. Joe, once you find out about this, are you going to enforce the immigration laws in Presque Isle County against your friend Tom Moran?"

(f)     "And who was responsible for getting Tom Moran to be the keynote speaker for the Presque Isle County Republicans? Bill Largent. Why would Bill Largent, an Oakland County Republican who has migrated up here to Presque Isle County—why would he do that? Did Bill Largent know that Tom Moran was going to publicly announce that he was going to bring illegal immigrants to work at Moran Iron Works in Presque Isle County? Did he know that? Was that part of Bill Largent's agenda? I have no idea. I'm just asking the questions."

25.     Defendant Bishop's statements, broadcast by Defendant WCHY, were meant to defame Plaintiffs and to incite animus toward MIW employees and their families.

26.     To the extent that any MIW has employed or is employing a non-United States national, MIW has complied with all applicable laws, regulations and rules (both state and federal) regarding the employment of such individuals.

27.     To the extent that MIW employs a non-United States national, that employee is not "illegally" in the United States.

28.     To the extent that MIW employs a non-United States national, that employee is not "illegally" working at MIW.

5

29. As a result, Defendant Bishop's defamatory comments broadcast over Defendant WCHY's airwaves, MIW workers and their school-age children have been harassed and falsely accused of being "illegal" and, in one case, a "drug dealer."

30. In a letter dated and emailed on September 20, 2024, attached as Exhibit 3 (First Retraction Demand"), Plaintiffs, through their counsel, identified the specific date and specific statements made during the September 12 broadcast that defamed them and demanded that Defendant Bishop:

    (a)    "Remove the audio file [containing the false statements regarding Plaintiffs] from your website." *Id.*

    (b)    "Immediately cease repeating false statements regarding Mr. Moran, Moran Iron Works and the immigration status of Moran Iron Works' employees." *Id.*

    (c)    Issue a public correction that specifies that Mr. Bishop's statements were false and that all MIW employees are legal to work in the United States. *Id.*

31. Plaintiffs demanded that Defendant Bishop take the corrective actions identified in the First Retraction Demand by September 30, 2024.

32. Defendant Bishop took no corrective actions and made no retraction of his defamatory statements prior to September 30, 2024.

33. Instead, on September 25, 2024, five days after the receipt of the First Retraction Demand, Defendant Bishop continued to make false statements regarding Plaintiffs' employment of "illegal immigrants" during his "yourdefendingfathers" program broadcast over WCHY:

    "Onaway School District had to hire a bilingual teacher to teach three illegal immigrant-, migrant-workers' children how to speak English at a cost of

4878-0104-5490_2

roughly $70,000 a year for a paycheck plus benefits. They had to hire a bilingual for three migrant workers children to learn how to speak English in the Onaway school. I've been told those migrant workers work for Tom Moran and Moran Iron Works. Increasing the cost to the school district for this bilingual teacher for three kids. This is the kind of information you need to share with people. It's that simple. If I'm wrong, text me, call me. Set me straight."

34.     During the September 25, 2024 broadcast, Defendant continued to refer to his previous defamatory statements regarding Plaintiffs, this time connecting it to Plaintiff Moran's decision to seek election to the Onaway School Board: "One of them who's running for school board, I believe, has an agenda with regards to migrant workers. I'm going to be researching and diving into this situation even further, as we get closer to the election, you will find out about it. I'm going to completely expose his hidden agenda as to why he is taking his time to run for school board."

35.     In response to Defendant Bishop's continued defamation of Plaintiffs over Defendant WCHY's air waves, in a letter dated  October 2, 2024, Plaintiffs' counsel demanded that WCHY cease and desist broadcasting defamatory statements regarding Plaintiffs hiring practices or the immigration status of its workforce and publish a retraction of the prior defamatory statements. A true and accurate copy of the October 2, 2024 letter is attached as Exhibit 4 ("Second Retraction Demand") .

36.     During the October 7, 2024 broadcast of his "yourdefendingfathers" radio broadcast, Defendant Bishop made what he claimed  was a "retraction" of his previous defamatory statements.

7

37.     Defendant Bishop's statement was not a retraction, but publication of additional defamatory statements regarding Plaintiffs. Defendant Bishop stated that:

(a)     "I don't lie, on this show, or any time in my life. That's number one."

(b)     He asserted that he had "evidence" to establish that his defamatory statements were true, specifically stating, "All I can say, I would love to go to a courtroom in front of a jury and provide my evidence that I have."

38.     Defendant Bishop repeatedly stated that his decision to read the retraction of the demanded by Plaintiffs was not because those statements were untrue and without any basis in fact. Rather, Defendant Bishop stated that he was only reading the retraction demanded by Plaintiffs in order to avoid the expense of defending against a defamation lawsuit and inconveniencing unnamed third parties (some of whom he claimed were listeners of his broadcast) whom he would be compelled to subpoena to testify at trial in support of his assertion that the accusations he made against Plaintiffs were true.

39.     In an email sent on October 8, 2024, a true and accurate copy of which is attached as Exhibit 5, Plaintiffs' counsel notified Defendants that the purported "retraction" was inadequate and requested that the attorney Defendant Bishop claimed represented Defendants during the October 7, 2024, broadcast of "Your Defending Fathers" contact Plaintiffs' counsel. *See* Exhibit 5.

40.     Neither Defendants, nor any attorney purporting to represent them, contacted Plaintiffs or their counsel in response to the October 8, 2024 email.

8

41.    In an email sent on October 11, 2024, a true and accurate copy of which is attached as Exhibit 6, Plaintiffs' counsel again requested that Defendants or their counsel contact her with regard to the adequacy of the retraction.

42.    Neither Defendants, nor any attorney purporting to represent them, contacted Plaintiffs or their counsel in response to the October 11, 2024 email.

**COUNT I**
**DEFAMATION *PER SE* OF PLAINTIFF MORAN**
**BY DEFENDANT BISHOP**

43.    Plaintiff incorporates by reference paragraphs 1 through 42.

44.    Pursuant to 8 U.S.C. § 1324a, it is a federal crime to for any person or entity to hie or employ an "unauthorized alien" without complying with the requirements of federal law and obtaining the property documentation.

45.    Defendant Bishop intentionally published verbal statements about Plaintiff Moran on his radio program "Your Defending Fathers."

46.    The statements concerning Defendant Moran are false and defamatory.

47.    The publications were not privileged and made to third parties.

48.    Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false. At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

49.    The words published by Defendant Bishop charge commission of a crime and are *per se* defamatory pursuant to MCL 600.2911 and hence injury to reputation is presumed.

50.    Defendant Bishop was given notice on September 20, 2024 of the defamation and a demand to publish a retraction and given a reasonable time to do so, (10) ten days.

9

51.     Defendant Bishop failed to publish a retraction and continued to publish additional false statements regarding Defendant Moran on the "yourdefendingfathers" broadcast on September 25, 2024 and again on October 7, 2024.

52.     Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant to remove all defamatory statements made against Plaintiff on his social media accounts, including but not limited to "yourdefenddingfathers.com" enter a judgment against the Defendant Moran for the Plaintiff in excess of $25,000.00 including exemplary and punitive damages and award such other relief to Plaintiff Moran as the Court deems just and proper, costs and attorney fees incurred in connection with this action.

**COUNT II**
**DEFAMATION OF PLAINTIFF MORAN BY**
**DEFENDANT BISHOP**

53.     Plaintiff incorporates by reference paragraphs 1 through 52.

54.     This Count is pled in the alternative, in the event that the Court determines that Defendant Bishop's published statements do not constitute defamation *per se* pursuant to MCL 600.2911.

55.     Defendant Bishop published intentionally false verbal statements about Plaintiff Moran.

56.     Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

57.     The publication was not privileged.

10

58.    The publication of these remarks has resulted in damage to Plaintiff Moran's reputation in the community and economic losses and all other damages that may arise through the course of discovery and trial.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant Bishop to remove all defamatory statements made against Plaintiff Moran on his social media accounts and the archived files at WCHY and  enter a judgment against the Defendant Bishop for the Plaintiff Moran in excess of $25,000.00 and award such other relief to Plaintiff as the Court deems just and proper including costs and attorney fees incurred in connection with this action.

**COUNT III**
**DEFAMATION *PER SE* OF PLAINTIFF MORAN IRON WORKS**
**BY DEFENDANT BISHOP**

59.    Plaintiffs incorporate by reference paragraphs 1 through 58.

60.    Pursuant to 8 U.S.C. § 1324a, it is a federal crime to for any person or entity to hire or employ an "unauthorized alien" without complying with the requirements of federal law and obtaining the proper documentation.

61.    Defendant Bishop intentionally published verbal statements about Plaintiff Moran Iron Works on his radio program "Your Defending Fathers."

62.    The statements concerning Plaintiff  Moran Iron Works are false and defamatory.

63.    The publications were not privileged and made to third parties.

64.    Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

65.    The words published by Defendant Bishop charge commission of a crime and are *per se* defamatory pursuant to MCL 600.2911 and hence injury to reputation is presumed.

11

66.     Defendant Bishop was given notice on September 20, 2024 of the defamation and a demand to publish a retraction and given a reasonable time to do so, (10) ten days.

67.     Defendant Bishop failed to publish a retraction and continued to publish additional false statements regarding Defendant Moran Iron Works on the "Your Defending Fathers" broadcast on September 25, 2024 and again on October 7, 2024.

68.     Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant Bishop to remove all defamatory statements made against Plaintiff on his social media accounts, including but not limited to "yourdefenddingfathers.com" enter a judgment against the Defendant Bishop for the Plaintiff in excess of $25,000.00 including exemplary and punitive damages and award such other relief to Plaintiff Moran Ironworks as the Court deems just and proper, costs and attorney fees incurred in connection with this action.

### COUNT IV
### DEFAMATION  OF PLAINTIFF MORAN IRON WORKS BY DEFENDANT BISHOP

69.     Plaintiff incorporates by reference paragraphs 1 through 68.

70.     This Count is pled in the alternative, in the event that the Court determines that Defendant Bishop's published statements do not constitute defamation *per se* pursuant to MCL 600.2911.

71.     Defendant Bishop published intentionally false verbal statements about Plaintiff Moran Ironworks.

12

72.     Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false. At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

73.     The publication was not privileged.

74.     The publication of these remarks has resulted in damage to Plaintiff Moran Iron Works's reputation in the community and economic losses and all other damages that may arise through the course of discovery and trial.

75.     Defendant Bishop was given notice on September 20, 2024 to publish a retraction and given a reasonable time to do so, (10) ten days.

76.     Defendant Bishop failed to publish a retraction and continued to publish additional false statements regarding Defendant Moran Iron Works on the "Your Defending Fathers" broadcast on September 25, 2024 and again on October 7, 2024.

77.     Defendant Bishop made the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false. At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant Bishop to remove all defamatory statements made against Plaintiff Moran Iron Works from on his social media accounts and the archived files at WCHY and enter a judgment against the Defendant Bishop for the Plaintiff Moran Iron Works in excess of $25,000.00 and award such other relief to Plaintiff as the Court deems just and proper including costs and attorney fees incurred in connection with this action.

### COUNT V
### DEFAMATION *PER SE* OF PLAINTIFF MORAN
### BY DEFENDANT WCHY

78.     Plaintiffs incorporate by reference paragraphs 1 through 77.

13

79.     Pursuant to 8 U.S.C. § 1324a, it is a federal crime to for any person or entity to hire or employ an "unauthorized alien" without complying with the requirements of federal law and obtaining the proper documentation.

80.     Defendant Bishop is an agent of Defendant WCHY whose duties include producing a program for broadcast on Defendant WCHY.

81.     Defendant WCHY has control over its agents.

82.     Defendant WCHY has control over the content of its broadcasts.

83.     Defendant Bishop produces and broadcasts a weekly program that is broadcast on WCHY.

84.     During the October 7, 2024, broadcast of his program on WCHY, Defendant Bishop repeatedly stated that, by contract, Defendant WCHY decided not to impose any restrictions on the content of his broadcast or the statements that he makes during such broadcasts and permits him to say whatever he sees fit.

85.     The statements broadcast by Defendant WCHY concerning Plaintiff Moran are false and defamatory.

86.     The publications were not privileged and made to third parties.

87.     Defendant WCHY published defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran broadcast by Defendant WCHY were negligent.

88.     Defendant WCHY's broadcast of Defendant Bishop's statements charging Plaintiff Moran with the commission of a crime are *per se* defamatory pursuant to MCL 600.2911 and hence injury to reputation is presumed.

14

89.     Defendant WCHY was given notice on October 4, 2024 to publish a retraction and given a reasonable time to do so.

90.     Defendant WCHY failed to publish a retraction.

91.     Defendant WCHY broadcast additional defamatory statements by Defendant Bishop that it knew were false or with reckless disregard of whether or not they were false. At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant WCHY to remove all defamatory statements made against Plaintiff Moran from its systems, its social media accounts, including but not limited to "yourdefenddingfathers.com" enter a judgment against Defendant WCHY for Plaintiff Moran in excess of $25,000.00 including exemplary and punitive damages and award such other relief to Plaintiff Moran as the Court deems just and proper, costs and attorney fees incurred in connection with this action.

**COUNT VI**
**DEFAMATION OF PLAINTIFF MORAN BY**
**DEFENDANT WCHY**

92.     Plaintiff incorporates by reference paragraphs 1 through 91.

93.     This Count is pled in the alternative, in the event that the Court determines that Defendant WCHY's published statements do not constitute defamation *per se* pursuant to MCL 600.2911.

94.     Defendant WCHY published intentionally false verbal statements about Plaintiff Moran.

95.     Defendant WCHY broadcast the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false. At the very least, these defamatory statements regarding Plaintiff Moran broadcast by Defendant WCHY were negligent.

96.     The publication was not privileged.

15

97.     The publication of these remarks has resulted in damage to Plaintiff Moran's reputation in the community and economic losses and all other damages that may arise through the course of discovery and trial.

98.     Defendant WCHY was given notice on October 4, 2024 to publish a retraction and given a reasonable time to do so.

99.     Defendant WCHY failed to publish a retraction.

100.    Defendant WCHY broadcast additional defamatory statements by Defendant Bishop that it knew were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant WCHY to remove all defamatory statements made against Plaintiff Moran from its systems, its social media accounts, including but not limited to "yourdefenddingfathers.com" enter a judgment against Defendant WCHY for Plaintiff Moran in excess of $25,000.00 including exemplary and punitive damages and award such other relief to Plaintiff Moran as the Court deems just and proper, costs and attorney fees incurred in connection with this action.

**COUNT VII**
**DEFAMATION *PER SE* OF PLAINTIFF MORAN IRON WORKS**
**BY DEFENDANT WCHY**

101.    Plaintiffs incorporate by reference paragraphs 1 through 100.

102.    Pursuant to 8 U.S.C. § 1324a, it is a federal crime to for any person or entity to hire or employ an "unauthorized alien" without complying with the requirements of federal law and obtaining the proper documentation.

103.    Defendant Bishop is an agent of Defendant WCHY whose duties include producing a program for broadcast on Defendant WCHY.

104.    Defendant WCHY has control over its agents.

16

105.   Defendant WCHY has control over the content of its broadcasts.

106.   Defendant Bishop produces and broadcasts a weekly program that is broadcast on WCHY.

107.   During the October 7, 2024 broadcast of his program on WCHY, Defendant Bishop repeatedly stated that, by contract, Defendant WCHY decided not to impose any restrictions on the content of his broadcast or the statements that he makes during such broadcasts and permits him to say whatever he sees fit.

108.   The statements broadcast by Defendant WCHY concerning Plaintiff Moran Iron Works are false and defamatory.

109.   Defendant WCHY broadcast the defamatory statements with knowledge that they were false or with reckless disregard of whether or not they were false.  At the very least, these defamatory statements regarding Plaintiff Moran broadcast by Defendant WCHY were negligent.

110.   The publications were not privileged and made to third parties.

111.   Defendant WCHY's broadcast of Defendant Bishop's statements   charging Plaintiff Moran Iron Works with the commission of a crime are *per se* defamatory pursuant to MCL 600.2911 and hence injury to reputation is presumed.

112.   Defendant WCHY was given notice on October 4, 2024 to publish a retraction and given a reasonable time to do so.

113.   Defendant WCHY failed to publish a retraction.

114.   Defendant WCHY allowed its agent to affirm the defamatory statements in which Defendant Bishop claimed to have "evidence" that his statements were "true" and that he "would love to go to a courtroom."

17

115.     Defendant WCHY broadcast these additional defamatory statements by Defendant Bishop that it knew were false or with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran made by Defendant Bishop were negligent.

WHEREFORE, Plaintiff respectfully request that the Court order an injunction requiring Defendant WCHY to remove all defamatory statements made against Plaintiff Moran Iron Works from its systems, its social media accounts, including but not limited to "yourdefenddingfathers.com" enter a judgment against Defendant WCHY for Plaintiff Moran in excess of $25,000.00 including exemplary and punitive damages and award such other relief to Plaintiff Moran as the Court deems just and proper, costs and attorney fees incurred in connection with this action.

**COUNT VIII**
**DEFAMATION OF PLAINTIFF MORAN IRON WORKS**
**BY DEFENDANT WCHY**

116.     Plaintiff incorporates by reference paragraphs 1 through 115

117.     This Count is pled in the alternative, in the event that the Court determines that Defendant WCHY's published statements do not constitute defamation *per se* pursuant to MCL 600.2911.

118.     Defendant WCHY published intentionally false verbal statements about Plaintiff Moran Iron Works.

119.     Defendant WCHY knew that the statements made by Defendant Bishop were false or were made with reckless disregard of whether or not they were false.  At the very least, these statements regarding Plaintiff Moran broadcast by Defendant WCHY were negligent.

120.     The publication was not privileged.

18

121.    The publication of these remarks has resulted in damage to Plaintiff Moran Iron Works' reputation in the community and economic losses and all other damages that may arise through the course of discovery and trial.

WHEREFORE, Plaintiff Moran Iron Works respectfully request that this Honorable Court order an injunction requiring Defendant WCHY to remove all defamatory statements made against Plaintiff Moran Iron Works from its systems, its social media accounts, including but not limited to "yourdefenddingfathers.com" enter a judgment against Defendant WCHY for Plaintiff Moran Iron Works in excess of $25,000.00 including exemplary and punitive damages and award such other relief to Plaintiff Moran Iron Works as the Court deems just and proper, costs and attorney fees incurred in connection with this action.

Respectfully submitted,

BODMAN PLC

By: _____

Sandra L. Jasinski (P37430)
Spencer M. Darling (P87321)
201 South Division Street – Suite 400
Ann Arbor, Michigan 48104
(231) 627-8012
sjasinski@bodmanlaw.com
sdarling@bodmanlaw.com
Attorneys for Plaintiffs

October 28, 2024

4878-0104-5490_2

# Exhibit 1

Newspapers
- by ancestry
https://www.newspapers.com/image/99854284/

Detroit Free Press (Detroit, Michigan) · Tue, Apr 28, 1998 · Page 59
Downloaded on Oct 19, 2024

**WARREN**

## Appointees won't get overtime pay

Mayoral appointees will not get paid for the hours they work over their regular schedule, Mayor Mark Steenbergh has decided.

A City Council subcommittee had been studying whether to pay the appointees, usually department heads, in dollars or in comp time, which is how they're compensated for the extra hours now.

The council was to vote on the issue tonight, but Steenbergh decided it had become too controversial, Deputy Mayor Mike Greiner said Monday.

Steenbergh has been worried that qualified people would be deterred from working in Warren because their jobs require more than 40 hours a week.

"He feels it's important to be able to keep good people in these jobs," Greiner said. "But it just got all mired in politics."
*By Kim North*

**CHESTERFIELD TOWNSHIP**

## Contractor fraud case bound over

A case against an Algonac man accused of taking $50,000 from a Chesterfield Township couple and failing to build their home was bound over to Macomb County Circuit Court on Monday.

Police said Randy Bishop took money from Leonard and Cynthia Karbowski, but left them with a vacant lot. He is free on $5,000 bond.

Following a preliminary exam in 42nd District Court in New Baltimore, Judge Paul Cassidy upheld the charges. If convicted, Bishop, 42, faces up to 14 years in prison.
*By Ilaina Jonas*

**ROMEO**

## Ford employees to lend a hand

The Romeo Historical Society and Romeo's Samaritan House are getting restoration help today.

Forty-five workers from the Ford Engine Plant in Romeo will donate four hours of their time to the two groups.

The society is restoring an old State Police post as a headquarters. Ten Ford workers will prepare the walls for painting, saving the society about $3,320.

At Samaritan House, which provides emergency food, clothing and shelter, 35 workers will paint and clean.

Ford will pay the workers while they donate their time.
*By Jeanne May*

**CHESTERFIELD TOWNSHIP**

## Police still seek identity for body

Township police said Monday they haven't identified a nude body two Medstar Ambulance Service workers found Saturday morning wrapped in thin plastic.

Police said the body of a man, between 50 and 60 years old, was partially decomposed when it was found behind a Kmart off I.H. Vergote near 23 Mile and Gratiot.

Police said the first joints on the man's index fingers were missing, but the injuries probably were not related to the death.

Police are not releasing the cause of death.

Anyone with information is asked to call 1-810-949-2322.
*By Ilaina Jonas*

Copyright © 2024 Newspapers.com. All Rights Reserved.

 LexisNexis

**1 OF 1 RECORD(S)**

# Michigan Department Of Corrections

**Offender Information**

|  |  |
|---|---|
| Name: | BISHOP, RANDY ALVIN |
| Address: | MI |
| Case Number: | 981522-FH |
| Case Type: | Department Of Correction |
| Party Status: | DISCHARGED |
| DOB: | 01/1958 |
| SSN: | 376-68-XXXX |
| Race: | WHITE |
| Sex: | Male |
| Eyes: | BLUE |
| Hair: | BROWN |
| Height: | 6'3" |
| Weight: | 260 lbs |

**Offenses**
**Offense #1**

|  |  |
|---|---|
| Groups: | FRAUD OFFENSES |
| Categories: | FRAUD |
| Case Number: | 981522-FH |
| Case Type: | Department Of Correction |
| Offense Date: | 05/27/1996 |
| Sentence Date: | 01/12/1999 |
| Sentence: | Sentence Type : PROBATION |
| Offense: | CONTRACTOR - FRAUDULENT USE OF BUILDING CONTRACT FUND |
| Sentence: | Sentence Type : PROBATION |

**Offense #2**

|  |  |
|---|---|
| Groups: | FRAUD OFFENSES |
| Categories: | FRAUD |
| Case Number: | 981522-FH |
| Case Type: | Department Of Correction |
| Offense Date: | 05/27/1996 |
| Sentence Date: | 01/12/1999 |
| Sentence: | Sentence Type : PROBATION |
| Offense: | OBTAIN MONEY OVER $100 FALSE PRETENSES |
| Sentence: | Sentence Type : PROBATION |

**Parole/Probations**
[NONE FOUND]

**Prison Inmate Records**

|  |  |
|---|---|
| Scheduled Release Date: | 01/06/2004 |

# Exhibit 2

Approved by OMB (Office of Management and Budget) | OMB Control Number 3060-0110

 Federal
Communications
Commission

(REFERENCE COPY - Not for submission)

# Renewal of License

File Number: **0000114878**    Submit Date: **05/29/2020**    Call Sign: **WCHY**    Facility ID: **189567**    FRN: **0020584355**    State:

**Michigan**    City: **CHEBOYGAN**

Service: **FM**    Purpose: **Renewal of License**    Status: **Granted**    Status Date: **12/14/2022**    Expiration Date: **10/01/2028**

Filing Status: **Active**

| | | | |
|---|---|---|---|
| **General Information** | **Section** | **Question** | **Response** |
| | **Attachments** | Are attachments (other than associated schedules) being filed with this application? | No |

| | | | |
|---|---|---|---|
| **Fees, Waivers, and Exemptions** | **Section** | **Question** | **Response** |
| | **Fees** | Is the applicant exempt from FCC application Fees? | No |
| | | Indicate reason for fee exemption: | |
| | | Is the applicant exempt from FCC regulatory Fees? | No |
| | **Waivers** | Does this filing request a waiver of the Commission's rule(s)? | No |
| | | Total number of rule sections involved in this waiver request: | |

| Application Type | Fee Code | Fee Amount |
|---|---|---|
| Renewal of License | MGR | $200.00 |
| | **Total** | **$200.00** |

**Applicant Information**

**Applicant Name, Type, and Contact Information**

| Applicant | Address | Phone | Email | Applicant Type |
|---|---|---|---|---|
| **MICHIGAN BROADCASTERS LLC** Doing Business As: MICHIGAN BROADCASTERS LLC | Victoria Bishop 11089 Wood Special Dr KEWADIN, MI 49648 United States | +1 (231) 360-5125 | wchy. us@gmail.com | Limited Liability Company |

| Contact Representatives (2) | Contact Name | Address | Phone | Email | Contact Type |
|---|---|---|---|---|---|
| | **Victoria Bishop , Bishop .** *Managing Member* MICHIGAN BROADCASTERS LLC | Victoria Bishop 11089 Wood Special Dr KEWADIN, MI 49648 United States | +1 (231) 360-5125 | wchy.us@gmail.com | Managing Member |
| | **Del Reynolds** *Engineer* Northern Star Broadcasting | PO Box 248 Indian River, MI 49749 United States | +1 (231) 290-1107 | del@nsbroadcasting.com | Technical Representative |

| Renewal Certification | Section | Question | Response |
|---|---|---|---|
| | **Character Issues** | Licensee certifies that neither the licensee nor any party to the application has or has had any interest in, or connection with, any broadcast application in any proceeding where character issues were left unresolved, or were resolved adversely against the applicant or any party to the application; | Yes |
| | | Licensee certifies that neither the licensee nor any party to the application has or has had any interest in, or connection with, any pending broadcast application in which character issues have been raised.. | Yes |
| | **Adverse Findings** | Licensee certifies that, with respect to the licensee and each party to the application, no adverse finding has been made, nor has an adverse final action been taken by any court or administrative body in a civil or criminal proceeding brought under the provisions of any laws related to any of the following: any felony; mass media-related antitrust or unfair competition; fraudulent statements to another governmental unit; or discrimination. | Yes |
| | **FCC Violations during the Preceding License Term** | Licensee certifies that, with respect to the station(s) for which renewal is requested, there have been no violations by the licensee of the Communications Act of 1934, as amended, or the rules or regulations of the Commission during the preceding license term. If "No", the licensee must submit an explanatory exhibit providing complete descriptions of all violations. | Yes |
| | **Ownership** | The licensee certifies that, with respect to the station(s) for which renewal is requested, it complied with 47 CFR Section 73.3555. | Yes |
| | **Alien Ownership and Control** | Licensee certifies that it complies with the provisions of Section 310 of the Communications Act of 1934, as amended, relating to interests of aliens and foreign governments. | Yes |
| | **Non-Discriminatory Advertising Sales Agreements** | Commercial licensee certifies that its advertising sales agreements do not discriminate on the basis of race or ethnicity and that all such agreements held by the licensee contain non-discrimination clauses. Noncommercial licensees should select "not applicable." | Yes |

**AM/FM/LPFM Certification**

| Section | Question | Response |
|---|---|---|
| Biennial Ownership Report | Licensee certifies that the station's Biennial Ownership Report (FCC Form 323 or 323-E) has been filed with the Commission, as required by 47 C.F.R. Sections 73.3615 and 74.797. | Yes |
| EEO Program | The station's Broadcast EEO Program Report (FCC Form 396), has been filed with the Commission, as required by 47 C.F.R. Section 73.2080(f)(1). | Yes<br>File Number: 0000114848 |
| | The station has posted its most recent Broadcast EEO Public File Report on the station's website, as required by 47 C.F.R. Section 73.2080(c)(6). | N/A |
| Online Public Inspection File | Licensee certifies that the documentation required by 47 C.F.R. Section 73.3526 or 73.3527, as applicable, has been uploaded to the station's public inspection file as and when required. | Yes |
| Adherence to Minimum Operating Schedule | Licensee certifies that, during the preceding license term, the station has not been silent (or operating for less than its prescribed minimum operating hours) for any period of more than 30 days. | Yes |
| Silent Station | Licensee certifies that the station is currently on the air broadcasting programming intended to be received by the public. | Yes |
| Discontinued Operations | Licensee certifies that during the preceding license term, the station has not been silent for any consecutive 12-month period. | Yes |
| Environmental Effects | Licensee certifies that the specified facility complies with the maximum permissible radio frequency electromagnetic exposure limits for controlled and uncontrolled environments. | Yes |

| Other BroadCast Certifications | Section | Question | Response |
|---|---|---|---|
| | Other BroadCast Certifications | Does this application include one or more FM translator station(s) or TV translator station(s) or LPTV station(s), in addition to the station listed at the top of this section? | No |

You have not selected any Other Broadcast Station.

**FM Translator
Certifications**

| Certification | Section | Question | Response |
|---|---|---|---|
| | **General Certification Statements** | The Applicant waives any claim to the use of any particular frequency or of the electromagnetic spectrum as against the regulatory power of the United States because of the previous use of the same, whether by authorization or otherwise, and requests an Authorization in accordance with this application (See Section 304 of the Communications Act of 1934, as amended.). | |
| | | The Applicant certifies that neither the Applicant nor any other party to the application is subject to a denial of Federal benefits pursuant to §5301 of the Anti-Drug Abuse Act of 1988, 21 U.S.C. §862, because of a conviction for possession or distribution of a controlled substance. This certification does not apply to applications filed in services exempted under §1.2002(c) of the rules, 47 CFR . See §1.2002(b) of the rules, 47 CFR §1.2002(b), for the definition of "party to the application" as used in this certification §1.2002 (c). The Applicant certifies that all statements made in this application and in the exhibits, attachments, or documents incorporated by reference are material, are part of this application, and are true, complete, correct, and made in good faith. | |
| | **Authorized Party to Sign** | **FAILURE TO SIGN THIS APPLICATION MAY RESULT IN DISMISSAL OF THE APPLICATION AND FORFEITURE OF ANY FEES PAID** Upon grant of this application, the Authorization Holder may be subject to certain construction or coverage requirements. Failure to meet the construction or coverage requirements will result in automatic cancellation of the Authorization. Consult appropriate FCC regulations to determine the construction or coverage requirements that apply to the type of Authorization requested in this application. WILLFUL FALSE STATEMENTS MADE ON THIS FORM OR ANY ATTACHMENTS ARE PUNISHABLE BY FINE AND /OR IMPRISONMENT (U.S. Code, Title 18, §1001) AND/OR REVOCATION OF ANY STATION AUTHORIZATION (U.S. Code, Title 47, §312(a)(1)), AND/OR FORFEITURE (U.S. Code, Title 47, §503). | |
| | | I certify that this application includes all required and relevant attachments. | Yes |
| | | I declare, under penalty of perjury, that I am an authorized representative of the above-named applicant for the Authorization(s) specified above. | **Victoria Bishop** *Managing Member* 05/29/2020 |

**Attachments**          Information not provided.

# Exhibit 3

**SANDRA L. JASINSKI**
SJASINSKI@BODMANLAW.COM
231-627-8012

September 20, 2024

Mr. Randy Bishop
P.O. Box 650
Elk Rapids, MI 49629

*Via Email Only*
*patriotvoice2012@gmail.com*

BODMAN PLC
SUITE 400
201 SOUTH DIVISION STREET
ANN ARBOR, MICHIGAN 48104
734-930-2494 FAX
231-627-8000

Re:   Defamation

## bodman

Mr. Bishop:

Bodman PLC represents Mr. Thomas Moran and Moran Iron Works. During the September 12, 2024 episode of your podcast on the "Patriot Voice Radio Network," you defamed Moran Iron Works and Mr. Moran by making false statements about their compliance with the law. These statements were made knowingly, maliciously, with reckless disregard of the truth, and without any factual basis. They are the types of statements that are widely known and universally recognized to generate threatening and dangerous behavior of others.

We demand that you (1) remove all instances of the September 12 podcast; (2) cease repeating the false statements regarding the immigration status of Moran Iron Work's employees as described below; and, (3) issue a public correction to your defamatory statements along the lines described below.

With no evidence, you accused Mr. Moran and Moran Iron Works of violating numerous laws. Specifically, you accused Mr. Moran and Moran Iron Works of "shipping in" illegal immigrants to supplement its workforce. This is false. All Moran Iron Works employees are lawfully employed. That Moran Iron Works may employ individuals who were born outside of the United States is not evidence that those individuals are employed in violation of the law.

Making false statements that damage a person or business entity's reputation constitutes defamation. *Heritage Optical Ctr., Inc. v. Levine*, 137 Mich. App. 793, 797 (1984). Specifically, with respect to business entities, statements are defamatory when they tend to "prejudice [the entity] in the conduct of its business or to deter others from dealing with it." *Mich. Microtech, Inc. v. Federated Publ'ns, Inc.*, 187 Mich. App. 178, 183, (1991). Accusing Mr. Moran and Moran Iron Works of violating federal law is prejudicial and tends to deter others from business dealings and community engagement. Making the false statements on your show constitutes "publication" of the defamatory statement.

During your September 12 podcast, you stated you are "free" to discuss Moran Iron Work's (nonexistent) plan to "ship in" illegal immigrants because Mr. Moran is now running for an elected position on a local school board. You are wrong. The First Amendment does not give you a license to lie about Mr. Moran or Moran Iron Works.

DETROIT   |   TROY   |   ANN ARBOR   |   GRAND RAPIDS

September 20, 2024
Page 2

First, Moran Iron Works, the corporate entity, is not a public figure and is legally distinct from Mr. Moran. Your false statements were about Moran Iron Works -- its hiring policies and its compliance with the law. Those defamatory statements are separately actionable from your statements about Mr. Moran.

Second, even if Mr. Moran was a public figure, the scope of that characterization is limited to his running for a school board position. *See Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974). Running for office does not provide you any right to fabricate lies about Mr. Moran. Finally, even if Mr. Moran is a public figure to some degree, that does not give you a license to defame him with impunity. The law recognizes that it is possible to defame a public figure. This is especially true when the speaker (you) makes a false statement about a public figure *that they know to be false*.

The facts establish that you knew your statements were false. You claim to base your defamatory statements on a speech Mr. Moran gave at a Reagan Day dinner, but there is **nothing** in Mr. Moran's speech that remotely suggests Moran Iron Works hires illegal immigrants from Mexico or any other country. Our investigation reveals that no one else left that dinner with the impression that Moran Iron Works hires individuals who are not legally in this country. Later in your September 12 podcast, you expanded your defamatory statements to suggest that "Mr. Bill Largent" may have been aware of Moran Iron Work's (nonexistent) plan to hire "illegal Mexicans." You then admit that you had no basis to make your statement: "*I don't know… I am just asking the questions.*" Evidently, you felt that making this statement would protect you from liability for defamation. You are wrong.

You knowingly made false and reckless statements that have caused Moran Iron Works' workers to be harassed in public resulting in Moran Iron Works' expenditure of time and money to ensure worker safety. Moreover, your defamatory statements have degraded Moran Iron Works' reputation in the community and risk affecting its business relationships. As detailed above, there are clear grounds to bring suit against you on a variety of theories, including defamation.

We therefore demand that you:

1.    Remove the audio file named "20240912-ydf_h202.mp3" from your website.

September 20, 2024
Page 3

2.  Immediately cease repeating false statements regarding Mr. Moran, Moran Iron Works and the immigration status of Moran Iron Works' employees.

3.  Publicly correct your false statements by issuing a correction on your radio show/podcast. This correction should specify:

    a.  That your past statements regarding the immigration status of Moran Iron Works workers were false and based on absolutely no evidence.

    b.  That all Moran Iron Workers are legal to work in the United States.

Failure to comply with any of these demands by September 30, 2024 will result in further legal action against you. Should you need clarification about these demands, please contact me via the email address above.

Regards,

*Sandra L. Jasinski*

Sandra L. Jasinski

# Exhibit 4

**SANDRA L. JASINSKI**
SJASINSKI@BODMANLAW.COM
231-627-8012

October 2, 2024

BODMAN PLC
SUITE 400
201 SOUTH DIVISION STREET
ANN ARBOR, MICHIGAN 48104
734-930-2494 FAX
231-627-8000

Michigan Broadcasters, LLC
Attn: Victoria Bishop
11089 Wood Special Dr.
Kewadin, MI 49648

*Via email*
wchy.us@gmail.com

Re:     Defamation

Ms. Bishop:



Bodman PLC represents Mr. Thomas Moran and Moran Iron Works. During WCHY's September 12, 2024, and September 25, 2024 broadcasts of its program entitled "Your Defending Fathers" hosted by Mr. Randy Bishop, WCHY defamed Moran Iron Works and Mr. Moran by airing Mr. Bishop's false statements that they violated the law in connection with its hiring practices. These statements were made knowingly, maliciously, with reckless disregard of the truth, and without any factual basis. They are the types of statements that are widely known and universally recognized to generate threatening and dangerous behavior of others.

We demand that WCHY (1) remove all recorded instances of the September 12th and 25th broadcast; (2) cease repeating the false statements regarding the immigration status of Moran Iron Work's employees as described below; and, (3) issue a public correction to the defamatory statements along the lines described below.

During WCHY's September 12th broadcast, with no evidence, Mr. Bishop accused Mr. Moran and Moran Iron Works of violating numerous laws. Specifically, Mr. Bishop accused Mr. Moran and Moran Iron Works of "shipping in" illegal immigrants to supplement its workforce. In a letter dated September 21, 2024 sent to Mr. Bishop, accompanies this letter, I demanded that Mr. Bishop cease and desist making these utterly false statements of fact and immediately retract them.

Instead of issuing a retraction, Mr. Bishop decided to "double down."  , During the September 25 broadcast of "Your Defending Fathers," Mr. Bishop stated that a local school district had to hire a bilingual teacher to educate the children of three "illegal"immigrants.  He then stated that the parents of these children work at Moran Iron Works.  All of these statements are false.  All Moran Iron Works employees are lawfully employed.   That Moran Iron Works may employ individuals who were born outside of the United States is not evidence that those individuals are employed in violation of the law.

DETROIT    |    TROY    |    ANN ARBOR    |    GRAND RAPIDS

October 2, 2024
Page 2

Making false statements that damage a person or business entity's reputation constitutes defamation. *Heritage Optical Ctr., Inc. v. Levine*, 137 Mich. App. 793, 797 (1984). Specifically, with respect to business entities, statements are defamatory when they tend to "prejudice [the entity] in the conduct of its business or to deter others from dealing with it." *Mich. Microtech, Inc. v. Federated Publ'ns, Inc.*, 187 Mich. App. 178, 183, (1991). Accusing Mr. Moran and Moran Iron Works of violating federal law is prejudicial and tends to deter others from business dealings and community engagement. WCHY's broadcast constitutes "publication" of defamatory statements.

During WCHY's September 12th broadcast, Mr. Bishop stated he was "free" to discuss Moran Iron Work's (nonexistent) plan to "ship in" illegal immigrants because Mr. Moran is now running for an elected position on a local school board. Mr. Bishop is wrong. If WCHY's ownership and management believe that Mr. Bishop has a license to either Moran Iron Works or Mr. Moran because he seeks to be elected to the local school board, they are also wrong. The First Amendment does not give either WCHY or Mr. Bishop a license to broadcast lies about Mr. Moran or Moran Iron Works.

First, Moran Iron Works, the corporate entity, is not a public figure and is legally distinct from Mr. Moran.    Mr. Bishop's false statements broadcast over WCHYere about Moran Iron Works -- its hiring policies and its compliance with the law.    Those defamatory statements are separately actionable from Mr. Bishop's statements about Mr. Moran.

Second, even if Mr. Moran was a public figure, the scope of that characterization is limited to his running for a school board position. *See Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974). Running for office does not provide Mr. Bishop any right to fabricate lies about Mr. Moran. Finally, even if Mr. Moran is a public figure to some degree, that does not give Mr. Bishop a license to defame him with impunity. The same holds true for WCHY. The law recognizes that it is possible to defame a public figure. This is especially true when the speaker (Mr. Bishop) makes a false statement about a public figure *that they know to be false*.

The facts establish that Mr. Bishop knew his statements were false. Mr. Bishop claims to base his defamatory statements on a speech Mr. Moran gave at a Reagan Day dinner, but there is **nothing** in Mr. Moran's speech that remotely suggests Moran Iron Works hires illegal immigrants from Mexico or any other country. Our investigation reveals that no one else left that dinner with the impression that Moran Iron Works hires individuals who are not legally in this country. Later in the September 12th broadcast, Mr. Bishop expanded his defamatory statements to suggest that "Mr. Bill Largent" may have been aware

October 2, 2024
Page 3

of Moran Iron Work's (nonexistent) plan to hire "illegal Mexicans." Mr. Bishop then admits that he had no basis to make his statement: *"I don't know… I am just asking the questions."*  Evidently, Mr. Bishop felt that making this statement would protect him and WCHY from liability for defamation.  He is wrong.

Mr. Bishop knowingly made false and reckless statements and WCHY broadcast these statements which subsequently caused Moran Iron Works' workers to be harassed in public resulting in Moran Iron Works' expenditure of time and money to ensure worker safety.  Moreover, Mr. Bishop's defamatory statements have degraded Moran Iron Works' reputation in the community and risk affecting its business relationships.  As detailed above, there are clear grounds to bring suit against both Mr. Bishop and WCHYon a variety of theories, including defamation.

We therefore demand that you:

1. Remove any recordings of the September 12th and September 25th broadcasts that refer to Mr. Moran or Moran Iron Works;

2. Immediately cease repeating false statements/ regarding Mr. Moran, Moran Iron Works and the immigration status of Moran Iron Works' employees; and

3. Publicly correct your false statements by issuing a correction on WCHY.  The correction must air between 8am and 10am on a weekday.  This correction should specify:

   a. That Mr. Bishop's past statements regarding the immigration status of Moran Iron Works workers were false and based on absolutely no evidence.

   b. That all Moran Iron Workers are legal to work in the United States.

Failure to comply with any of these demands by October 8, 2024 will result in further legal action against Mr. Bishop and WCHY.  Should you need clarification about these demands, please contact me via the email address above.

October 2, 2024
Page 4

Regards,

Sandra L. Jasinski

# Exhibit 5

| | |
|---|---|
| **From:** | Jasinski, Sandra |
| **Sent:** | Tuesday, October 8, 2024 11:23 AM |
| **To:** | Randy Bishop |
| **Cc:** | WCHY.us@gmail.com |
| **Subject:** | RE: Mr. Tom Moran/Moran Iron Works |

Good Morning Mr. Bishop and WCHY:

Thank you for your email.

In the podcast link you provided, you make several references to counsel you consulted in connection with the cease and desist letters.

Allow me to direct your attention to Rule 4.2(a) of the Rules of Professional Conduct: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, **unless the lawyer has the consent of the other lawyer or is authorized by law to do so.**" (emphasis supplied).

Based on the statements you made during your broadcast, you and WCHY are represented by counsel. I must receive the consent of that counsel in order to discuss the inadequacy of what you believe is your retraction and/or your demand to provide more detail regarding the "specific links" to the defamatory statements outlined in the prior letters which contain, I submit, more than sufficient information to remove the defamatory statements from the "server." The "consent" required by the Rules of Professional Conduct cannot come from you or the station, but only the attorney to whom you repeatedly referred in your broadcast. Please provide the name and contact information for your counsel or have that person directly contact me.

Regards,

SLJ

**Sandra L. Jasinski**
231-627-8012
SJasinski@BODMANLAW.COM



bodman
ATTORNEYS & COUNSELORS

# Exhibit 6

**From:** Jasinski, Sandra
**Sent:** Friday, October 11, 2024 12:24 PM
**To:** Randy Bishop
**Cc:** WCHY.us@gmail.com
**Subject:** RE: Mr. Tom Moran/Moran Iron Works

Good Afternoon:

I have not received a response to this email. Mr. Bishop made several statements that he and the station were represented by counsel. Mr. Bishop also emphasized, and expressed in absolute terms, that he does not lie. Please provide me with the contact information for counsel for Mr. Bishop and the station.

I look forward to hearing from you.

SLJ

**Sandra L. Jasinski**
231-627-8012
SJasinski@BODMANLAW.COM



**From:** Jasinski, Sandra
**Sent:** Tuesday, October 8, 2024 11:23 AM
**To:** Randy Bishop <patriotvoice2012@gmail.com>
**Cc:** WCHY.us@gmail.com
**Subject:** RE: Mr. Tom Moran/Moran Iron Works

Good Morning Mr. Bishop and WCHY:

Thank you for your email.

In the podcast link you provided, you make several references to counsel you consulted in connection with the cease and desist letters.

Allow me to direct your attention to Rule 4.2(a) of the Rules of Professional Conduct: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, **unless the lawyer has the consent of the other lawyer or is authorized by law to do so.**" (emphasis supplied).

Based on the statements you made during your broadcast, you and WCHY are represented by counsel. I must receive the consent of that counsel in order to discuss the inadequacy of what you believe is your retraction and/or your demand to provide more detail regarding the "specific links" to the defamatory statements outlined in the prior letters which contain, I submit, more than sufficient information to remove the defamatory statements from the "server." The "consent" required by the Rules of Professional Conduct cannot come from

1

you or the station, but only the attorney to whom you repeatedly referred in your broadcast.  Please provide the name and contact information for your counsel or have that person directly contact me.

Regards,

SLJ

**Sandra L. Jasinski**
231-627-8012
SJasinski@BODMANLAW.COM



**Summons**   (3/23)

Case Number 24- _9092_ -NZ

**PROOF OF SERVICE**

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

**CERTIFICATE OF SERVICE / NONSERVICE**

☐ I served   ☐ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| | |
| Place or address of service | |
| | |
| Attachments (if any) | |
| | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | **TOTAL FEE** $ | Name (type or print) |

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____ .
Attachments (if any)                                                          Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105